**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Lentz,<br><br>           Plaintiff,<br><br>v.<br><br>United States Air Force,<br><br>           Defendant. | No. CV-17-01660-PHX-JJT<br><br>**ORDER** |

At issue is Defendant United States Air Force's (USAF) Rule 12(b)(1) Motion to Dismiss (Doc. 29, MTD), to which *pro se* Plaintiff Gary Lentz has filed a Response (Doc. 30, Resp.), and the USAF has filed a Reply (Doc. 31, Reply). No party requested oral argument on the Motion and the Court finds it appropriate for resolution without such argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant the USAF's Motion and dismiss Plaintiff's claim with prejudice.

**I.    BACKGROUND**

In this lawsuit, Plaintiff brings a property damage claim against the USAF pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. On July 29, 2016, an unexpected storm known as a "microburst" struck the area near Gila Bend Air Force Auxiliary Field (GBAFAF) in Maricopa County, Arizona. (Compl. ¶ 3; Resp. at 3.) The storm produced wind speeds of up to nearly 90 mph, the highest wind gust speeds encountered at GBAFAF in a seven month period. (MTD Ex. 3 ¶¶ 7-8.) The storm's high wind speeds resulted in significant damage to the roof of GBAFAF's main

lodging/lobby, also known as Building 4300. (MTD Ex. 2 ¶ 15.) A portion of Building 4300's tarred asphalt roof landed northeast of the building in a tennis court and parking lot area. (MTD Ex. 1 ¶ 36.)

At the time of the storm, Plaintiff's recreational vehicle (RV) was parked approximately 500 feet to the northwest of Building 4300 at a family campground known as "Fam Camp." (Compl. ¶ 1; MTD at 3.) Plaintiff submitted a written claim for damages to the USAF approximately two weeks after the storm, alleging that flying debris from Building 4300 had caused damage to his RV. (Compl. ¶¶ 3-5.) The USAF rejected Plaintiff's claim for damages on January 11, 2017, approximately five months later. (Compl. ¶ 6.) Plaintiff now alleges that the USAF's negligent maintenance of Building 4300 caused damages to his RV and seeks damages in the amount of $48,000 for storage fees, meals and incidental expenses, hotel and lodging, salvage value of the RV, and upgrade extras to the RV. (Compl. ¶ 14.)

In its Motion to Dismiss, the USAF argues that Plaintiff's claim is barred by the independent contractor exception to the FTCA because contractor Tunista Services, LLC (Tunista) maintained and was independently responsible for the roofs at GBAFAF. (MTD at 4.)

**II.    LEGAL STANDARD**

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction.").

The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). However, in FTCA cases, the "United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). Here, the USAF has filed declarations and other evidence with its Motion to Dismiss, thus mounting a factual attack on the existence of subject matter jurisdiction in this case. In response, Plaintiff has neglected to file any additional evidence, affidavits, or declarations to support his position. Plaintiff does not dispute the supplemental declarations and exhibits filed by the USAF. In evaluating the USAF's factual Rule 12(b)(1) challenge, the Court will consider the evidence submitted beyond the Complaint.

**III.  ANALYSIS**

    **A.  The USAF's Contract with Tunista**

The USAF's contract with Tunista became effective on February 9, 2015, and extends into the year 2020. (MTD Attach. A, LENTZ-USAF-000161.) As part of its contract with the USAF, Tunista was required to provide Civil Engineering services, including roof maintenance and repair, to GBAFAF. (MTD Ex. 1, Attach. A, LENTZ-USAF-000163.) These services were required to be performed "in accordance with the performance works statement." (MTD Ex. 1, Attach. A, LENTZ-USAF-000163.) The performance works statement (PWS) states that "[t]he quality of the work performed under this contract is the responsibility of the contractor," and that Tunista must "provide and maintain a quality control program" as well as "perform all required inspections." (MTD Ex. 1, Attach. B, LENTZ-USAF-000581, 696.) Tunista must also provide a site manager "who shall be responsible for the performance of all work." (MTD Ex. 1, Attach. B, LENTZ-USAF-000583.) In his declaration, Timothy Sizemore avers that Richard Carr was Tunista's site manager during 2016 and was responsible for overseeing all work performed under the contract. (MTD Ex. 1 ¶ 16.) Moreover, in addition to the maintenance of GBAFAF, Tunista is responsible for maintaining Fam Camp and its

utilities, parking spaces, improved grounds, and road and fire suppression systems. (MTD Ex. 1, Attach. B, LENTZ-USAF-000610.)

The PWS projected that 220 man hours per year would be necessary for Tunista's maintenance and repair of the roofs, trim, and gutters at GBAFAF. (MTD Ex. 1, Attach. B, LENTZ-USAF-000721.) Specifically, the PWS stated that "the contractor shall install, repair, [and] replace components and maintain built up roofs, felts, bitumen, aggregate, stops, flashing, and insulation. [The contractor shall] [r]epair pitched roofs, shingles, roll roofs, felt and flashing, drip edges, gutters and down spouts[,] [and] [r]epair metal roofs, roof beams, purling, sag rods and brace rods IAW AFI 32-1051. The contractor's repairs shall match the rest of the roof." (MTD Ex. 1, Attach. B, LENTZ-USAF-000605.)

In addition to the PWS, Tunista was required to adhere to and follow the Department of Defense's (DoD) United Facilities Criteria (UFC). (MTD Ex. 1 ¶ 13.) The UFC "provides planning, design, construction, sustainment, restoration, and modernization criteria, and applies to the Military Departments, the Defense Agencies, and the DoD Field Activities" and is "used for all DoD projects and work for other customers where appropriate." (MTD Ex. 1, Attach. C, LENTZ-USAF-000237.) UFC Series 3-110-04 specifically applies to and "unifies the roofing maintenance and repair criteria for the DoD" and states that "[f]acility roof maintenance requirements and standards shall be performed by personnel responsible for this task." (MTD Ex. 1, Attach. C, LENTZ-USAF-000238, 000241). Section 1-4.4 defines maintenance as "proactive efforts expended on a recurrent, periodic schedule that are necessary to preserve the condition of the roof components and systems" and states that "[m]aintenance efforts generally occur prior to failure of the roof system . . . and include periodic inspections and resulting diagnosis of required repairs." (MTD Ex. 1, Attach. C, LENTZ-USAF-000241).

Consistent with the periodic inspections required by the UFC, the PWS additionally clarifies that Tunista must "provide and maintain a quality control program" and must "perform all required inspections." (MTD Ex. 1, Attach. B, LENTZ-USAF-

000581.) To comply with these requirements, Tunista maintained a computer program called Maintenance 500 for tracking scheduled roof maintenance and roof repairs at GBAFAF. (MTD Ex. 2 ¶ 9.) Mr. Joaquin Alegria, a Tunista employee, was responsible for reviewing the program and conducting visual inspections of GBAFAF roofs to determine if the roofs were in need of repairs. (MTD Ex. 2 ¶ 8.) Mr. Alegria avers that "[n]o Air Force personnel ha[d] access to/oversee/make inputs or changes to [the Maintenance 500] program." (MTD Ex. 2 ¶ 9.) He further states that the program is overseen by Tunista's site manager, Mr. Carr. (MTD Ex. 2 ¶ 9.)

On June 5, 2016, after noticing that GBAFAF's Building 4300 was due to be inspected soon as part of Tunista's regular maintenance program, Mr. Alegria placed a work order into the system for the "Roof Semiannual Scheduled Inspection." (MTD Ex. 2 ¶ 11.) He performed the annual inspection three days later, on June 7, 2016, and determined that the roof did not need repairs and was structurally sound. (MTD Ex. 2 ¶ 12.) This inspection occurred 52 days before the "microburst" storm on July 29, 2016, that caused damage to the roof of Building 4300.

### B. FTCA and the Independent Contractor Exception

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976); 28 U.S.C. § 1346. Section 2671 of Title 28 U.S.C. defines "employee of the government" as "officers or employees of any federal agency," but expressly states that the definition of "'Federal agency' . . . does not include any contractor with the United States." This language has been interpreted to create an "independent contractor exception" to the FTCA, which protects the United States from being held vicariously liable for the negligent actions of an independent contractor. *Orleans¸* 425 U.S. at 814; *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016).

Because the FTCA is a waiver of the government's sovereign immunity, it must be strictly construed and any vagueness is interpreted in favor of the United States. *United*

*States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992); *see also Orleans,* 425 U.S. at 814 ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver."); *Robb v. United States*, 80 F.3d 884, 894 (4th Cir. 1996) ("The FTCA, as a waiver of sovereign immunity, is strictly construed and . . . [a]ccordingly, the independent contractor exception to the waiver of sovereign immunity has been construed broadly." (citations omitted)).

Whether the independent contractor exception applies to a government contractor turns on "the existence of federal authority to control and supervise the 'detailed physical performance' and 'day-to-day operations' of the contractor, and not whether the agent must comply with federal standards and regulations." *Ducey v. United States*, 713 F.2d 504, 516 (9th Cir. 1983). The Court in *Ducey* found that "regulation-mandated contractual restrictions" imposed on an independent contractor that were designed to standardize and "secure federal objectives" were not enough to convert the independent entrepreneur into an "agent" of the federal government. *Id.; see also Logue v. United States*, 412 U.S. 521, 528 (1973) ("the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor"); *Autrey v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) ("Contractual provisions directing detailed performance generally do not abrogate the contractor exception."); *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987) ("[T]he ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees.").

Applying these standards, the undisputed evidence submitted by the USAF shows that Tunista was an independent contractor to the USAF and not an employee. Tunista was responsible for all of the Civil Engineering services on GBAFAF, including the maintenance and repair of the roof on Building 4300, and maintained a separate work order program to which no Air Force employees had access. The contract, PWS, and UFC all indicate that the USAF did not direct the actual performance of the contract and

that Tunista and its site manager, Mr. Carr, were responsible for the duties specified by the contract. Plaintiff disputes that the USAF delegated all duties related to the roof to Tunista, arguing that the USAF retained the duty to evaluate Tunista's performance, although Plaintiff does not argue that the USAF was responsible for the day-to-day operations of Tunista. As the Ninth Circuit points out in *Letnes*, compelling compliance with federal regulations does not abrogate the independent contractor exception. It also does not imply that the USAF controlled the detailed physical performance of Tunista. Thus, the Court finds that Tunista was an independent contractor and not an employee working for the USAF.

### C. The USAF's Non-Delegable Duty

The crux of Plaintiff's argument, however, is not that the independent contractor exception does not apply here because Tunista was in fact an employee of the USAF. Rather, Plaintiff asserts that the independent contractor exception cannot apply here because the USAF owed Plaintiff a non-delegable duty under Arizona law. (Resp. at 3.)

"Whether the United States may be held liable under the FTCA for its own acts or omissions is a three-step inquiry." *Edison,* 822 F.3d at 519. The first step is determining whether state law would impose a duty of care on a private individual in like circumstances. *Id.* The second step is determining whether, in the language of the contract or in the parties' actions, the United States retained some portion of that duty for which it may be held liable. *Id*. The final step states that the United States may still be liable for the negligent actions of an independent contractor if the duty owed was one that was non-delegable under state law. *Id.* (citing *Yanez v. United States*, 63 F.3d 870, 874-75 (9th Cir. 1995); *McGarry v. United States*, 549 F.2d 587, 590 (9th Cir. 1976)).

Here, Plaintiff relies on the Restatement (Second) of Torts § 422 and *Ft. Lowell-NSS Ltd. Partnership v. Kelly*, 800 P.2d 962 (1990), to assert that Arizona law imposes non-delegable duties on landowners. (Resp. at 3.) The second step of the *Edison* analysis is made irrelevant following the Court's finding above that the USAF had delegated all of its duties to Tunista regarding the maintenance and repair of the roofs at GBAFAF.

However, Plaintiff asserts that the USAF fails at the third step of the inquiry and should be held liable because § 422 of the Restatement (Second) of Torts and *Ft. Lowell* state that Arizona law imposes a non-delegable duty on landowners, and therefore the independent contractor exception cannot apply here.

While Plaintiff's argument correctly identifies Arizona state law, Plaintiff's argument fails to address the fact that state law cannot preempt the FTCA if the state law imposes strict liability on the Government. *See Laird v. Nelms*, 406 U.S. 797, 804 (1972); *Dalehite v. United States*, 346 U.S. 15, 30-31, 44-45 (1953) ("[O]ur decisions have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions."); *Bramer v. United States*, 595 F.2d 1141, 1144 n.7 (9th Cir. 1979) ("Jurisdiction is similarly lacking if state law would impose upon the government a type of liability, such as strict liability, which is beyond the cognizance of the Federal Tort Claims Act."); *Morris v. United States*, No. CV-07-1837-PHX-PGR, 2009 WL 2486013, *17 (D. Ariz. Aug. 12, 2009) ("the FTCA precludes the application to the United States of any state law imposing strict liability").

It is without question that § 422 of the Restatement is a rule of vicarious liability, as is explicitly stated in the case that Plaintiff cites. *Ft. Lowell-NSS Limited Partnership*, 800 P.2d at 970 ("[S]ection 422 holds a possessor of land liable to his invitees for injuries that occur while he is in possession and result from his independent contractor's negligence in performing the duties of the possessor or of the contractor . . . although no fault of the possessor need be shown, the negligence of the independent contractor must be proven before liability may attach to the employer."); Restatement (Second) of Torts, ch. 15, topic 2, intro. note at 394 ("The rules stated in the following §§ 416-429 . . . are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault."). Indeed, the plaintiff in *Morris v. United States* cited to the same section of the Restatement that Plaintiff cites to here, and the court held that the section could not preempt the FTCA's independent contractor exception because § 422 is a rule of

vicarious liability. *Morris*, 2009 WL 2486013 at *19; *cf. Camozzi v. Roland/Miller & Hope Consulting Grp.*, 866 F.2d 287, 289 n.7 (9th Cir. 1989) (holding that immunity under the FTCA's discretionary function exception is not overridden by state tort rules and cannot be preempted by state law).

Consequently, Plaintiff's theory of liability is impermissible under the FTCA, as § 422 of the Restatement (Second) of Torts is a rule of vicarious liability and cannot preempt the independent contractor exception to the FTCA. Because that exception applies here, the Court lacks subject matter jurisdiction to hear the claim presented.

IT IS THEREFORE ORDERED granting Defendant United States Air Force's Motion to Dismiss (Doc. 29), and dismissing this action for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED denying as moot Defendant United States Air Force's Motion to Continue Deadlines to Conduct Good Faith Settlement Talks and to File Dispositive Motions (Doc. 37).

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 13th day of July, 2018.

Honorable John J. Tuchi
United States District Judge